**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BRIAN MICKENDROW, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ENSTAR (US) INC.,

Defendant.

Case No.: 8:24-cv-242

**DEFENDANT'S NOTICE OF REMOVAL**

Defendant Enstar (US) Inc. ("Enstar") removes the above-captioned action currently pending in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida, to the District Court of the United States, Middle District of Florida, on the grounds that this Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). In support of its Notice of Removal, Defendant avers as follows:

**NATURE OF REMOVED ACTION**

1) In late May 2023, Progress Software Company ("PSC") discovered that an unauthorized threat actor exploited a previously unknown vulnerability in its file transfer software, MOVEit (the "MOVEit Incident"). As a result, the threat actor was able to access data from government, public, and

private organizations worldwide, including Enstar. Within days of the MOVEit Incident being announced, class action lawsuits began to be filed all over the country. Those suits named—in various combinations—not just PSC, who owned and sold the software, but any identifiable downstream entity. Consequently, to date, suits have been brought against over 60 defendants. There are well over 200 cases in federal court.

2) Enstar focuses on the acquisition and management of (re)insurance companies and portfolios of (re)insurance business from other insurance companies and groups. In the course of that work, Enstar used the MOVEit managed file transfer application to transfer data.

3) Enstar provided notice of the MOVEit Incident to individuals whose information was potentially impacted by the MOVEit Incident.

4) On July 6, 2023, an application was filed with the United States Judicial Panel on Multidistrict Litigation ("JPML") to consolidate numerous federal court actions against Progress Software arising out of the same MOVEit Incident at issue in the Complaint. *See In re: MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, Dkt. No. 1 (J.P.M.L.).

5) On October 4, 2023, the JPML issued a transfer order centralizing federal actions involving the MOVEit Incident in the District of Massachusetts (the "MDL"), before the Honorable Allison Burroughs. *Id.* at Dkt. No. 312. Judge Burroughs has since held hearings, issued multiple orders, and is in the

process of selecting plaintiff leadership and setting a case management schedule that includes carefully established deadlines for discovery, motion practice, and other matters.

6) Despite the ongoing MDL designed to efficiently coordinate the hundreds of actions related to the MOVEit Incident, Plaintiff Brian Mickendrow commenced this action against Enstar in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 16-001391-CI (the "Circuit Court Action"), bringing claims that are virtually indistinguishable from those already pending in the MDL. A true and accurate copy of the Complaint in the Circuit Court Action is attached hereto as **Exhibit A**.

7) In addition, there are numerous other cases pending in the MDL of which Plaintiff is a putative class member, specifically cases already seeking to represent "Nationwide" classes of those impacted by the MOVEit Incident. *See e.g.*, *Cheng v. Pension Benefit Info., LLC et al.*, Case No. 1:23-cv-12474-ADB (D. Mass.); *Landis et al v. Progress Software Corp., et al.*, Case No. 1:23-cv-12472-ADB (D. Mass.).

8) Plaintiff does not allege facts regarding when or how the MOVEit Incident occurred, what information of his was allegedly disclosed, or his relationship with Enstar. In fact, Plaintiff claims that he "is unsure why

Defendant is in possession of his Sensitive Information," let alone what that information might be. Ex. A, ¶ 48.

9) Despite that, based on nothing more than receiving a statutorily-required letter in the mail, Plaintiff pleads causes of action for negligence, negligence per se, invasion of privacy, breach of implied contract, breach of third-party beneficiary contract, and unjust enrichment. Plaintiff seeks damages and injunctive relief, including requiring Defendant to implement various security changes. *Id.* at Prayer for Relief.

## TIMELINESS OF REMOVAL

10) Enstar was served with the Summons and Complaint on January 5, 2024. Attached hereto, and incorporated herein as **Exhibit B**, is a true and correct copy of the Circuit Court Action docket sheet. Attached hereto, and incorporated herein as **Exhibit C**, is a true and correct copy of *all* process, pleadings, and orders served on Defendant in the Circuit Court Action and filed in the Circuit Court Action. Pursuant to Local Rule 3.03, Defendant's Disclosure Statement is attached hereto as **Exhibit D**.

11) This Notice is timely because Defendant filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when defendant is served).

## JURISDICTION AND VENUE

12) This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

13) This Court has jurisdiction over this action under 28 U.S.C. §1332(d), and removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. § 1332(d).

## CAFA JURISDICTION

14) The Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 924-25 (11th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 88).

15) There is no presumption against removal under CAFA. *Id.; see also Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014) (holding that "[a]pplying this binding precedent from the Supreme Court [in *Dart Cherokee*], we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions"). In deciding whether removal is proper, "a court may rely on evidence put forward by the removing defendant, as well as

reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 924-25.

16) Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d)(1)-(2)(A); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

17) As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Defendant may remove the Circuit Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative nationwide class includes more than 100 members; (3) "minimal diversity" exists, *i.e.*, members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs. *See Lowery*, 483 F.3d at 1194.

18) **The Action Is Pled as a Class Action**. CAFA defines a "class action" as "'any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.'" 28 U.S.C. § 1332(d)(1).

19) Plaintiff brings this action as a "class action" and seeks class certification under Florida law pursuant to Florida Rules of Civil Procedure 1.220(a) and (b)(2) and/or 1.220(b)(3). Ex. A ¶ 90. Because Florida Rule 1.220 is a "similar State statute . . . authorizing an action be brought by 1 or more representative as a class action," the first CAFA element is satisfied. 28 U.S.C. § 1332(d)(1); *see Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.*, 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23."); *accord Rollins, Inc. v. Butland*, 951 So. 2d 860, 879 (Fla. Dist. Ct. App. 2006) (explaining that "federal cases are persuasive authority for the interpretation of rule 1.220" because it is similar to Federal Rule 23).

20) **The Putative Class Includes At Least 100 Members**. Plaintiff purports to bring this action on behalf of himself and "[a]ll individuals in the United States whose Sensitive Information was accessed without authorization in the Data Breach, including all those who received a notice of the Data Breach." Ex. A, ¶ 90.

21) Plaintiff alleges that "the Data Breach's impact has been substantial, affecting at least 64,934 consumers." *Id.* at ¶ 1. He further asserts that "it would be impracticable to join in a single action" the proposed class, "consisting of at least 64,934 members." *Id.* at ¶ 95.

22) Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

23) "**<u>Minimal Diversity" of Citizenship Exists</u>**. Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class is a citizen of a State different from any defendant." *See also Dart Cherokee*, 574 U.S. at 84-85.

24) To be a "citizen" of a state, the individual must not only reside in that state, but he or she also must "inten[d] to remain in that state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021). Plaintiff alleges that he "is a natural person and citizen of New Jersey, residing in Toms River, New Jersey, where he intends to remain." Ex. A at 14.

25) Plaintiff further alleges that "Defendant, Enstar, is a Florida and Delaware corporation with its principal place of business at 150 2nd Avenue North, Third Floor, St. Petersburg, FL, 33701, USA." *Id.* at ¶ 17. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

26) As pled, Plaintiff is a citizen of New Jersey and Defendant is a citizen of Florida and Delaware. Because Plaintiff and Defendant are citizens of different states, "minimal diversity" of citizenship exists for purposes of CAFA jurisdiction.

27) **<u>The Amount in Controversy Exceeds the CAFA Threshold</u>**. CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6).

28) Moreover, in the Eleventh Circuit, "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Morrison*, 228 F.3d at 1268 (citation omitted). The court "aggregate[s] the claims of individual class members and consider[s] the monetary value that would flow to the entire class if … relief were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(6)).

29) The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee*, 574 U.S. at 89; *accord Anderson*, 943 F.3d at 925. "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *McDaniel*, 568 F. App'x at 732.

30) Where a plaintiff does not plead a specific amount of damages, the removing defendant must establish by a preponderance of the evidence that

the amount in controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In determining whether the amount-in-controversy requirement is satisfied, the Court may consider various pieces of evidence, including "facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence." *Id.* at 754.

31) "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751. Indeed, as the Eleventh Circuit has recognized, "'the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'" *Id.*

32) The Complaint does not specify the amount of damages Plaintiff and the putative class members seek in this action. But the pleaded allegations demonstrate that the putative class members' claims, in the aggregate, exceed the sum or value of $5 million, exclusive of interest and costs.

33) Among other forms of relief, Plaintiff asks the Court to "[o]rder Enstar to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and class Members." Ex. A at ¶ 182. Three main identity-protection

agencies—Equifax,[1] LifeLock,[2] and Experian[3]—advertise monthly rates for credit-monitoring services ranging from $11.99 to $24.99 per person per month. For example, LifeLock offers a product, titled LifeLock Standard, that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $11.99 per month. Similarly, both Equifax and Experian offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 per month.

34) Taking the LifeLock product (at $11.99 per month), which costs $143.88 annually, the costs for providing just one year of credit monitoring to the approximately 64,934 members of the putative class would be $9,342,703.92, well exceeding the $5 million threshold.

35) In data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt., LLC*, No. EDCV 16-1005 JGB (KKX), 2016 WL 4051265, 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to

---

[1] *See* https://www.equifax.com/personal/ (last visited January 23, 2024).
[2] *See* https://lifelock.norton.com/products?inid=lifelock-lifelock-standard_subnav_products (last visited September 15, 2023).
[3] *See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited September 15, 2023).

remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.*, No. 1:12-cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same). Thus, the Complaint's request for damages for credit monitoring costs alone puts more than $5 million in controversy in this case.

36) Further, Plaintiff seeks injunctive and declaratory relief requiring untold changes to Enstar's cybersecurity practices, such as to require Enstar "to implement and maintain a comprehensive Information Security Program" and "to implement a system of tests to assess its respective employees knowledge of the education programs discussed in the [Complaint]." Ex. A at ¶ 182. These purported costs must also be considered in determining the amount-in-controversy. *See Fastcase, Inc., LLC,* 907 F.3d at 1344 (stating the "immediate financial consequences of the litigation" may be considered in calculating the amount in controversy) (citation and emphasis omitted)*;* *Adams,* 981 F. Supp. 2d at 847-48 ("[I]n assessing the jurisdictional amount in declaratory relief cases, the federal court should include in its assessment the value of all relief and benefits *that would logically flow* from the granting of the declaratory relief sought by the claimants. For example, a declaration that

a defendant's conduct is unlawful or fraudulent will carry certain consequences, such as the need to cease and desist from that conduct, that will often 'cost' the defendant in excess of $5,000,000.").

37) Thus, just with these two examples, Enstar has demonstrated by a preponderance of the evidence that the CAFA amount-in-controversy threshold has been met. *See, e.g., Lanier*, 256 F. App'x at 632 (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted); *see also, e.g., Thomas,* 2014 WL 4954389, at *3 (same; "The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.") (quotation omitted).

38) Because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Enstar has properly removed the Circuit Court Action to this Court.

**NOTICE**

39) As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida.

WHEREFORE, Defendant Enstar (US) Inc. removes the Circuit Court Action from the Circuit Court for the Sixth Judicial Circuit in and for Pinellas

County, Florida, to the United States District Court for the Middle District of Florida, Tampa Division.

Respectfully submitted this 25th day of January, 2024.

Respectfully submitted,

**BAKER & HOSTETLER LLP**
*s/Yameel L. Mercado Robles*
Yameel L. Mercado Robles
Florida Bar No.: 1003897
Email: ymercadorobles@bakerlaw.com
Christian H. Tiblier
Florida Bar No.: 125886
Email: ctiblier@bakerlaw.com
200 South Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2024, a true and correct copy of the foregoing document was served via e-mail to the following:

Jonathan M. Streisfeld
Jeff Ostrow
Steve Sukert
KOPELOWITZ OSTROW P.A.
One W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
streisfeld@kolawyers.com
ostrow@kolawyers.com
sukert@kolawyers.com

Amina A. Thomas
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
athomas@cohenandmalad.com

Andrew E. Mize
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
amize@stranchlaw.com

Samuel J. Strauss
Raina Borelli
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
(608) 237-1775
(608) 509-4423 (facsimile)
sam@turkestrauss.com
raina@turkestrauss.com

*/s/ Yameel L. Mercado Robles*
Yameel L. Mercado Robles
Florida Bar No.: 1003897